# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    Chapter 7

Barry Gene Sulier,                                        BKY 14-44997-KHS

                          Debtor.
_____

Jose Mario Lopez Hernandez,                               ADV 15-4076

                          Plaintiff,

                                                          MEMORANDUM OPINION
                                                          AND ORDER FOR
                                                          JUDGMENT
v.

Barry Gene Sulier,

                          Defendant.

_____

At Minneapolis, Minnesota, November 25, 2015.

This adversary proceeding came on for trial on September 15, 2015, to determine

whether an alleged debt owed by defendant Barry Gene Sulier to plaintiff Jose Mario Lopez

Hernandez should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4) or

(a)(6). The debt arose out of a sale of property by Jessica Sweno to the plaintiff. Andrew L.

Hodny appeared on behalf of the plaintiff and Douglas D. Kluver appeared on behalf of the

defendant.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

157(b)(1) & 1334, FED. R. BANKR. P. 7001, and Local Rule 1070-1.  This is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2)(I).

For the reasons stated below the Court finds in favor of the defendant.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 11/25/2015
Lori Vosejpka, Clerk, by LH

1

## FACTS

The following facts were either stipulated to by the parties or found by the Court after trial.

1.      The defendant is a resident of the State of Minnesota.

2.      The defendant completed 12th grade but did not graduate from high school.

3.      Since 2002, the defendant has worked full-time at Jennie-O Foods in Montevideo, Minnesota.

4.      The plaintiff and the defendant met at Jennie-O Foods in about 2005 and were co-workers.  The plaintiff was the defendant's assistant for some period of time and they worked together for six or seven years.  There was no testimony about the plaintiff's education.

5.      The plaintiff and the defendant were also casual friends and socialized some outside work.

6.      The plaintiff's native language is Spanish and he speaks and reads virtually no English.  The plaintiff had a translator at trial.

7.      The defendant's native language is English and he speaks some Spanish.

**THE SWENO PROPERTY**

8.      In 2003, the defendant and Jessica Sweno ("Ms. Sweno") began a romantic relationship; they never married.

9.      On May 20, 2004, Ms. Sweno purchased a house and a parcel of property located at 106 North First Street in Milan, Minnesota (the "Sweno Property"). She obtained a loan from First National Bank in Montevideo and granted the bank a mortgage on the Sweno Property as security for that loan (the "Sweno Mortgage").  The Sweno Mortgage was properly recorded in the Chippewa County Records.

2

10.     The original principal amount of the Sweno Note was $48,111 at 5.375% interest. It was a 30 year note and required a minimum monthly payment of approximately $400. Final payment on the note would have been due on June 1, 2034 (the "Sweno Note").

11.     First National Bank assigned the Sweno Note and the Sweno Mortgage to Minnesota Housing Finance Agency on May 20, 2004.

12.     The defendant had actual knowledge of the terms of the Sweno Note and the Sweno Mortgage.

13.     The defendant never had an ownership interest in the Sweno Property.

14.     The defendant and Ms. Sweno lived together at the Sweno Property from approximately May 2004 to August 2008.

15.     In 2008 the defendant and Ms. Sweno decided that they needed a larger home in the area for their growing family and intended to purchase one.

16.     The defendant approached the plaintiff and offered to lease the Sweno Property to him for $400 per month, which the plaintiff rejected because it was too far from work.  After the plaintiff rejected the offer to rent, the defendant offered the Sweno Property to the plaintiff for purchase on a contract for deed. After some discussion, the plaintiff agreed to purchase the Sweno Property for $46,000 plus taxes and insurance, with $6,000 down and monthly payments of no less than $600 per month ("Contract for Deed") with the term ending in May, 2012.  The Contract for Deed contained no terms about Ms. Sweno's use of the $600 payments.

17.     At the time they agreed to the purchase of the Sweno Property, Ms. Sweno and the plaintiff had no experience buying or selling real estate under a contract for deed.  At that time, the plaintiff and the defendant had no experience buying or selling real estate.  The defendant, however, had been present at the closing on the Sweno Property in 2004.

18.     The defendant arranged for the preparation of the Contract for Deed by his former attorney, George Hulstrand, Jr.

19.     The defendant met in person with Mr. Hulstrand but does not recall whether he told Mr. Hulstrand about the Sweno Mortgage.

20.     Neither the plaintiff nor Ms. Sweno met with or spoke to Mr. Hulstrand prior to signing the Contract for Deed.

21.     The plaintiff and Ms. Sweno signed the Contract for Deed before a notary on August 6, 2008, at KleinBank in Montevideo, Minnesota.  The defendant was present at the signing.

22.     The plaintiff could not and did not read the Contract for Deed before he signed it because it was written in English.  The plaintiff did not ask to have to have the Contract for Deed translated or the terms of the Contract for Deed explained to him in Spanish.

23.     There is no evidence that the defendant knew that the plaintiff could not and would not read the Contract for Deed prior to signing.

24.     The plaintiff did not seek advice or counsel from a lawyer, realtor or any person with experience in purchasing or selling real estate prior to or at the signing of the Contract for Deed.

25.     Neither Ms. Sweno nor the defendant told the plaintiff explicitly that there was a mortgage on the Sweno Property at the time the Contract for Deed was signed.

26.     Paragraph 2 of the Contract for Deed states:

> TITLE.  Seller warrants that title to the Property is, on the date of this contract, subject only to the following exceptions:
> (a) Covenants, conditions, restrictions, declarations and easements of record, if any;
> (b) Reservations of minerals or mineral rights by the State of Minnesota, if any;

(c) Building, zoning and subdivision laws and regulations;
(d) The lien of real estate taxes and installments of special assessments which are payable by Purchasers pursuant to paragraph 6 of this contract; and
(e) The following liens and encumbrances:

27.     Paragraph 2(e) of the Contract for Deed as signed is blank. Paragraph (2)(e) does not include the word "mortgage." There was no evidence that the defendant or Ms. Sweno knew that the Sweno Mortgage constituted a lien or encumbrance covered by Paragraph 2(e) at the time that the Contract for Deed was signed.

28.     The balance owing on the Sweno Mortgage at the time the Contract for Deed was signed is unknown. No amortization schedules were offered into evidence.

29.     At the time the Contract for Deed was signed, both Ms. Sweno and the defendant believed $46,000 would be sufficient to satisfy the balance owing on the Sweno Note if all of the plaintiff's payments were timely made.

30.     At the time the Contract for Deed was signed, the defendant and Ms. Sweno also believed that Ms. Sweno would be able to deliver clear title to the Sweno Property after the plaintiff made all of his required payments.

**THE SULIER PROPERTY**

31.     After the plaintiff purchased the Sweno Property, on August 27, 2008, the defendant purchased a home located at 407 North 4th Street, Milan, Minnesota 56262 (the "Sulier Property").

32.     Ms. Sweno gave the $6,000 down payment from the Contract for Deed to the defendant to be used as a down payment on the purchase of the Sulier Property.

33.     The defendant obtained a loan to purchase the Sulier Property and Ms. Sweno was not a party to that loan.

34.     The defendant's payments for the purchase of the Sulier Property were $600 per month.

35.     Ms. Sweno never had an ownership interest in the Sulier Property but she and the defendant lived there with their children after moving out of the Sweno Property.

**COURSE OF PAYMENTS ON THE CONTRACT FOR DEED**

36.     The plaintiff routinely made his payments in cash and gave them to the defendant.

37.     On several occasions, starting in 2008 or 2009 the defendant asked the plaintiff to make payments directly to the bank that held the Sweno Mortgage. The defendant did not specifically tell the plaintiff that there was a mortgage or debt on the property, but believed that the plaintiff understood at that time that there was a mortgage on the Sweno Property because he had asked the plaintiff to pay the bank.

38.     The plaintiff testified that he thought that the defendant's request that he make payments to the bank meant that the defendant was asking him to make payments at the bank, which was inconvenient, so he said no.  The plaintiff testified that he did not understand that there was a mortgage or debt owed and secured by the Sweno Property at that time.

39.     At some point, Ms. Sweno became concerned that the Sweno Note would not be paid off by May 2012. She and the defendant discussed that concern on several occasions and the defendant said that they would use their tax refunds to cover any shortfall because the tax refunds plus the amount of the minimum payments would cover the full amount due on the Sweno Note.  Ms. Sweno routinely received annual tax refunds in excess of $5,000.  Both Ms. Sweno and the defendant testified about these conversations.

40.    The tax refunds were not used to pay down the Sweno Mortgage although Ms. Sweno made the minimum $400 monthly payments on the Sweno Note throughout the term of the Contract for Deed.  The tax refunds went towards normal household expenses.

41.    The plaintiff gave the payments due under the Contract for Deed to the defendant until approximately March 2010, when the defendant and Ms. Sweno broke up.

42.    Ms. Sweno left the Sulier Property when they broke up and began collecting the payments directly from the plaintiff.  From April 2010 to May 2012, the plaintiff made all payments directly to Ms. Sweno.

43.    The plaintiff testified that he first learned of the Sweno Mortgage in late 2011 when Ms. Sweno told him that the balance owing on the Sweno Note at that time was approximately $39,000.  This was almost one and a half years after the defendant had stopped receiving payments from the plaintiff.

44.    After learning about the Sweno Note balance, the plaintiff continued to pay Ms. Sweno and paid an additional $3,300 on the Contract for Deed in order to help her pay the mortgage.

45.    The plaintiff's final payment on the Contract for Deed was May 8, 2012.  The plaintiff paid a total of $47,000 under the terms of the Contract for Deed.

46.    Ms. Sweno made all minimum payments that were due on the Sweno Note during the entire term of the Contract for Deed as required by Paragraph 15 of the Contract for Deed.

47.    Ms. Sweno stopped making payments on the Sweno Note after the plaintiff made his final payment on the Contract for Deed.

48.     Ms. Sweno failed to deliver marketable title on the Sweno Property to the plaintiff after the plaintiff satisfied the terms of the Contract for Deed because of the outstanding balance owed under the Sweno Note.

49.     The defendant did not know that Ms. Sweno would not be able to deliver marketable title to the plaintiff until late 2011, which was more than one year after he stopped accepting payments from the plaintiff.  After learning that Ms. Sweno would not be able to deliver marketable title, the defendant made a payment directly to the bank holding the Sweno Note in the approximate amount of $4,000 at the plaintiff's request.  The defendant also offered the plaintiff a motorcycle that he had originally bought for $14,000.

50.     On November 19, 2013, the lender foreclosed on the Sweno Property and it was sold for $28,480.00.

**THE BANKRUPTCY FILINGS**

51.     On February 25, 2013, Ms. Sweno filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Minnesota under Case No. 13-40821 (the "Sweno Bankruptcy").

52.     The plaintiff continued living in the Sweno Property until the Sweno Bankruptcy was filed, which was 9 months after he made his last payment under the Contract for Deed.

53.     On March 4, 2013, the plaintiff filed an adversary proceeding for determination of discharge in the Sweno Bankruptcy under Adversary No. 13-04056 (the "Sweno Adversary").

54.     Ms. Sweno and the plaintiff settled the Sweno Adversary and signed a settlement agreement on May 30, 2014. Ms. Sweno agreed that she owed the plaintiff a nondischargeable debt in the amount of $25,000 and would pay the plaintiff the sum of $18,000 in four annual payments in the amount of $4,500.

55.     The defendant was not a party to the Sweno Adversary or to the settlement agreement.

56.     Before Ms. Sweno and the plaintiff settled the Sweno Adversary, the defendant orally agreed to pay the plaintiff $22,000, which was the balance of the amount the plaintiff paid under the Contract for Deed after deducting the settlement amount from the agreement with Ms. Sweno.

57.     The defendant did not pay the plaintiff the $22,000.

58.     On December 18, 2014, the defendant filed for Chapter 7 bankruptcy protection. The bankruptcy case was pending before this Court and was closed on April 23, 2015.

59.     The defendant included the plaintiff in his Schedule F as a creditor holding a claim in an unknown amount, but the defendant did not list the plaintiff's claim as contingent, unliquidated or disputed.

60.     On April 3, 2015, the plaintiff timely filed the plaintiff's Adversary Complaint against the defendant, alleging that the $22,000 debt owed by the defendant to the plaintiff is not dischargeable in bankruptcy because the defendant:

> a.     owes a debt to the plaintiff for money or property that was obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A);
>
> b.     owes a debt to the plaintiff for money or property that was obtained by fraud while acting in a fiduciary capacity.  11 U.S.C. § 523(a)(4); and/or
>
> c.     owes a debt to the plaintiff for money or property that was obtained by willful and malicious injury.  11 U.S.C. § 523(a)(6).

The Court will discuss any additional facts, as necessary, in the remainder of its decision.

## DISCUSSION

In this case, the plaintiff alleges that the defendant induced the plaintiff to enter into the

Contract for Deed or make payments to him based on fraud in violation of 11 U.S.C. § 523(a).

**I.      Burden of Proof**

Under § 523(a) a discharge under § 727 does not discharge an individual defendant from

any debt:

- for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, false representation, or actual fraud.  11 U.S.C. § 523(a)(2)(A);

- for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.  11 U.S.C. § 523(a)(4); or

- for willful and malicious injury by the debtor to another entity or to the property of another entity.  11 U.S.C. § 523(a)(6).

Exceptions to discharge under § 523(a) are to be strictly and narrowly construed against

the creditor and liberally in favor of the debtor to facilitate the debtor's fresh start.  *In re*

*Thompson*, 686 F.3d 940, 944 (8th Cir. 2012) (citations omitted).  The creditor bears the burden

of proof by a preponderance of the evidence on all exceptions from discharge of debts under

§523(a). *Grovan v. Garner*, 498 U.S. 279, 286 (1991); *Fischer v. Scarborough*, 171 F.3d 638,

641 (8th Cir. 1999); and *Brown v. Manty*, 427 B.R. 715, 726 (D. Minn. 2010).

**II.      The Debt**

In order to prove that the debt is nondischargeable, the plaintiff here must first establish

that the defendant owes him a debt.  The defendant admitted a debt is owing to the plaintiff by

scheduling the plaintiff's claim as a non-contingent, undisputed debt in an unknown dollar

amount.  The schedules were signed under penalty of perjury and the defendant declared that

they were true and correct to the best of his knowledge.  The defendant admitted to using the

plaintiff's $6,000 down payment as a down payment on the Sulier Property.  He and Sweno also

used all or a portion of the plaintiff's monthly payments to pay the mortgage on the defendant's

house and their family's living expenses until 2010 when the defendant stopped taking payments

on Ms. Sweno's behalf. He no longer received any funds or benefit from the plaintiff's payments

after he and Ms. Sweno broke up.  The defendant's decision to schedule the debt owing to the

plaintiff as a non-contingent undisputed debt is sufficient to find that the defendant owes a debt

to the plaintiff.  *See Rimal v. Wibisono (In re Wibisono)*, 412 B.R. 747, 754 (Bankr. D. Md.

2009).  The Court finds that the defendant owes a debt to the plaintiff and now turns to whether

that debt is excepted from discharge under § 523.

## III.    Section 523(a)(2)(A) – False Pretenses, False Representations or Actual Fraud

The plaintiff alleges that the defendant induced the plaintiff to enter into the Contract for

Deed and obtained the down payment and subsequent payments from the plaintiff on the basis of

fraud under § 523(a)(2)(A) when he failed to tell the plaintiff about the Sweno Mortgage.  The

plaintiff also alleges that the defendant never intended that Sweno would deliver marketable title

when the plaintiff finished making his payments under the Contract for Deed. Under §

523(a)(2)(A), a creditor must show that the debtor obtained money, property, services, or an

extension, renewal, or refinance of credit by false pretenses, a false representation, or actual

fraud.  11 U.S.C. § 523(a)(2)(A).  Actual fraud consists of something said, done, or omitted by a

person with the intent to perpetrate what he knows to be a deception.  *Merchants Nat'l Bank v.*

*Moen (In re Moen)*, 238 B.R. 785, 790-91 (B.A.P. 8th Cir. 1999).  In order to prove that a debt is

nondischargeable, a creditor must prove the following elements:

1) The debtor made a representation;
2) The debtor knew that the representation was false at the time it was made;
3) The representation was deliberately made for the purpose of deceiving the creditor;

11

4) The creditor justifiably relied on the representation; and
5) The creditor sustained the alleged loss as the proximate result of the
   representation having been made.

*Id.* at 791.  *See also R&R Ready Mix v. Freier (In re Freier)*, 604 F.3d 583, 587 (8th Cir. 2010);

and *Koller v. Hoffmann (In re Hoffmann)*, 475 B.R. 692, 700 (Bankr. D. Minn. 2012).

A. **The defendant made a representation**

The plaintiff alleges that the defendant made two types of representations that were false:

(1) the promise to deliver clear title to the Sweno Property after all payments under the Contract

for Deed were made; and (2) the failure to inform the plaintiff of the existence of the mortgage.

One is a direct statement, the other an omission.  The Court will discuss these separately.

A direct misrepresentation includes oral or written assertions and "any other conduct that

amounts to an assertion not in accordance with the truth." *In re Moen*, 238 B.R. at 791.  Silence

regarding a material fact can also constitute a false representation as an omission under 11

U.S.C. § 523(a)(2)(A).  *In re Van Horne*, 823 F.2d 1285 (8th Cir. 1987).  A misrepresentation or

false representation under § 523(a)(2)(A) must relate to a past or present fact.  *In re Hoffmann*,

475 B.R. at 700.

The first category of alleged representations here are the statements that when the

defendant negotiated the terms of the contract, he told the plaintiff that Ms. Sweno would deliver

a Warranty Deed to the plaintiff and he would own the Sweno Property free and clear after all

payments were made under the Contract for Deed.  The evidence showed that the defendant

negotiated the terms of the Contract for Deed with the plaintiff and the defendant had his

attorney draw up the Contract for Deed. Thus there is a direct representation by the defendant

that the plaintiff would receive clear title from Ms. Sweno at the end of the term of the Contract

for Deed.  The Court finds that the promise to deliver clear title was a representation that may be

the basis of a fraud.

12

Next, the plaintiff alleges that the defendant made a representation by omission that was false because the defendant failed to disclose the mortgage on the Sweno Property. The Court notes that there is no allegation that the defendant said directly that there was no mortgage, rather the allegation is that the defendant failed to disclose the existence of the mortgage. Here the failure to disclose the Sweno Mortgage would be a representation by silence. The defendant provided the information to Mr. Hulstrand to draft the Contract for Deed and Paragraph 2(e) of the Contract for Deed has a place to list liens and encumbrances and that space is blank. The Sweno Mortgage should have been listed in paragraph 2(e) of the Contract for Deed but there is no evidence as to whether the defendant told Mr. Hulstrand about the mortgage so that it could be listed in the Contract for Deed. Neither side called Mr. Hulstrand. The Contract for Deed was silent regarding the existence of the Sweno Mortgage.

The evidence was overwhelming that the defendant failed to disclose the mortgage at the time that the Contract for Deed was signed. Because an omission may also be a representation, the Court finds that the failure to disclose the existence of the mortgage is also a representation that may be the basis of a fraud. *See In Facility Planning, Inc. v. King (In re King)*, 68 B.R. 569 (Bankr. D. Minn. 1986).

The failure to disclose the Sweno Mortgage during the course of the payments is also an alleged omission. While the defendant believed that he disclosed that there were payments owed to the bank, as discussed below, he never fully disclosed the existence of the Sweno Mortgage.

Thus, the plaintiff has met his burden of proof on the first element.

**B.** **The defendant knew that the representation was false at the time it was made**

A representation that is made "under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth" satisfies the knowledge requirement.

*In re Moen*, 238 B.R. at 791.   When assessing the debtor's knowledge of the falsity of a

representation or misrepresentation, the court must consider the debtor's knowledge or

experience. *Id.*  Further, a material promise to perform in the future that is made without the

intent to perform and with the intention of defrauding the creditor, constitutes actionable fraud

under § 523(a)(2)(A). *In re Freier*, 604 F.3d at 588; *Gadtke v. Bren (In re Bren)*, 284 B.R. 681,

690 (Bankr. D. Minn. 2002). A debtor's promise regarding a future action will only create a

misrepresentation or false representation under § 523(a)(2)(A) if the debtor possessed no intent

to perform the future act at the time the promise was made.  *See In re Bren*, 284 B.R. at 690.

   Actual fraud and fraudulent misrepresentation require that the representation is

accompanied by an element of scienter.  *Skull Valley Bank of Goshute Indians v. Chivers (In re

Chivers)*, 275 B.R. 606, 620 (Bankr. D. Utah 2002).  The maker of the representation must (a)

know or believe that the matter is not as he represents it to be; (b) lack confidence in the

accuracy of his representation; or (c) know that he does not have the basis for the representation.

*Id.* (citations omitted).  The representation may also be fraudulent if the maker knows that it may

be capable of two interpretations, one that he knows to be false and the other true if it was "made

(a) with the intention that it be understood in the sense in which it is false, or (b) without any

belief or expectation as to how it will be understood, or (c) with reckless indifference as to how it

will be understood." *Id.* at 620 n.7.  Additionally, a representation that is truthful but that the

maker knows or believes is materially misleading because of a failure to state additional or

qualifying matter is also a fraudulent misrepresentation.  *Id.* at 620.

   The representation that Ms. Sweno would deliver clear title at the end of the term for the

Contract for Deed is a promise regarding a future action so the plaintiff must prove that the

defendant possessed no intent that Ms. Sweno would deliver clear title.  The plaintiff alleges that

14

the defendant knew at the time the agreement was signed and while he was collecting payments from the defendant that this was false. "[F]raud may be proved by direct as well as circumstantial evidence, since palpable evidence of the mental state of an individual is rarely, if ever, available." *In re* Moen, 238 B.R. at 792 (citing *Seiders v. Fenninger (In re Fenninger)*, 49 B.R. 307, 310 (Bankr. E.D. Pa. 1985)).

There is rarely direct evidence that a person knows that his statement is false, as is the situation here. In that instance the court must look to the circumstances in this case. Here, when the Court looks at the circumstances and at the direct testimony of both the defendant and Ms. Sweno, it does not find that the defendant knew that his statements were false. At the time the Contract for Deed was negotiated, the testimony from the defendant and Ms. Sweno, whom the Court found credible, establishes that they both believed that the amount negotiated and payments required under the Contract for Deed would cover the outstanding balance on the mortgage and that clear title would be delivered to the plaintiff.

Further, there was no testimony or evidence that the defendant continued to tell the plaintiff that Ms. Sweno would produce marketable title at a time when the defendant knew that to be false. The defendant testified that he did not find out that the mortgage would not be paid in full until after Ms. Sweno moved out. At that point in time, the defendant was not receiving payments and had not been receiving payments for nearly one and a half years.

At some point prior to their break up, Ms. Sweno raised a concern that the mortgage might not be paid in full. They both testified that the defendant said that they would use their tax refunds to pay off any shortfall. Both Ms. Sweno and the defendant testified that they believed that use of their tax refunds and the plaintiff's monthly payments would be sufficient to pay off the mortgage. Ms. Sweno testified that she regularly received tax refunds in excess of $5,000.

Had the tax refunds been applied to the Sweno Mortgage as the defendant and Ms. Sweno planned to do, the Sweno Mortgage likely would have been paid off.  Unfortunately the tax refunds were used for the defendant and Ms. Sweno's living expenses and the Sweno Mortgage was not paid in full.[1]  The defendant learned that the Sweno Mortgage would not be satisfied long after he had stopped collecting the payments on the Contract for Deed.  The Court does not conclude that the defendant intended to deceive the plaintiff when he told the plaintiff that Ms. Sweno would deliver clear title. On the contrary, he believed that clear title would be delivered. He stopped collecting payments from the plaintiff when his relationship with Ms. Sweno ended, which was more than a year and a half before the final payment was due on the Contract for Deed. With the benefit of hindsight, the defendant's belief that the Sweno Note would be paid off was unrealistic, but it was not reckless or knowingly fraudulent.  He did not act or omit disclosure of information with fraudulent intent.  *See High Cotton Enterprises, Inc. v. Shadinger (In re Shadinger)*, 357 B.R. 158, 166 (Bankr. N.D. Ala. 2006).

Thus, the Court finds that the defendant's statements about delivering marketable title, made at the time of the signing of the Contract for Deed and during the time that the defendant collected payments, were not known to be false by the defendant at the time they were made; they were not fraudulent misrepresentations.

The second alleged misrepresentation is the failure to disclose the mortgage either in the Contract for Deed or otherwise.  Section 2 of the Contract for Deed states:

> TITLE.  Seller warrants that title to the Property is, on the date of this
> contract, subject only to the following exceptions:

---

[1] The Court notes that the difference between the plaintiff's monthly payments of $600 and the minimum payments on the Sweno Note of $400 for the 2 ½ years that the plaintiff paid Sweno directly was equal to Sweno's anticipated tax refunds during that same time frame.  Thus, if the tax refunds had been applied to the note during the term of the Contract for Deed, the Sweno Note could have been paid in full and the Sweno Mortgage released so that clear title could have been given to the plaintiff.

    (a) Covenants, conditions, restrictions, declarations and easements of
       record, if any;
    (b) Reservations of minerals or mineral rights by the State of Minnesota, if
       any;
    (c) Building, zoning and subdivision laws and regulations;
    (d) The lien of real estate taxes and installments of special assessments
       which are payable by Purchasers pursuant to paragraph 6 of this
       contract; and
    (e) The following liens and encumbrances:

While the defendant now says that he should have disclosed the mortgage, there is no evidence that the defendant deliberately omitted it from the Contract for Deed when drafted.   In looking at all of the surrounding circumstances, the Court is not persuaded that the defendant knew that the mortgage should have been listed in Paragraph 2(e) of the Contract for Deed and that he intentionally omitted it. Paragraph 2(e) of the Contract for Deed includes a place to list "liens and encumbrances." The word "mortgage" is not listed. The defendant did not graduate from high school and had never bought or sold real estate on a Contract for Deed.  While the defendant was at the Sweno Property closing and knew about the note and mortgage, it is not clear looking at all circumstances that the defendant knew that the failure to list the Sweno Mortgage on the Contract for Deed was a false representation or omission. This is not a situation involving a knowledgeable and sophisticated seller with considerable real estate experience. *See In re Hoffman*, 475 B.R. at 700.  The Court does not find that the defendant knew or should have known that the Sweno loan and mortgage should have been listed in the Contract for Deed at the time it was signed.

Next, the Court looks at whether the defendant knew or should have known that the Sweno Mortgage should have been disclosed later and that he knew his failure to disclose the mortgage would mislead the plaintiff.   The defendant testified credibly that after the time of the closing, he had informed the plaintiff that there was money owed.  The defendant testified that he

had asked the plaintiff several times to pay the bank directly.  He believed that he had conveyed

the fact that the bank was owed money on the Sweno Property and that the plaintiff understood

this.  Although he never used the word "mortgage" it is clear that, at a minimum, the defendant

believed that he had told the plaintiff of the existence of the debt.

Equally believable, the plaintiff testified that the defendant had asked him to pay the bank

but he understood this request to mean that the defendant was asking him to pay "at" the bank.

The bank was not close to the plaintiff's work or home. Because the plaintiff paid in cash or by

money order, he did not want to drive miles out of his way to make a payment when he could go

a few blocks to the defendant's house or make a payment at work.  Unfortunately, the language

barrier prevented the plaintiff from understanding the defendant's request and intended meaning.

The Court finds that the plaintiff has not met his burden of proof on this element.  In

reviewing the testimony and the actions taken by the parties, the Court is not persuaded by a

preponderance of the evidence that the defendant knew or should have known that his statements

about either delivering clear title or his failure to disclose the mortgage were false at the time the

Contract for Deed was signed or throughout their dealings. While the defendant feels badly for

the plaintiff and says now that he should have disclosed the mortgage, this does not prove that

the defendant knew or should have known that his statements or omissions were false during the

relevant time frame.

**C.      The representation was deliberately made for the purpose of deceiving the creditor**

Next, the plaintiff must prove that the defendant intended for the plaintiff to rely on the

failure to disclose the Sweno Mortgage with the specific purpose of inducing him to enter into

the Contract for Deed or to continue to make payments.  While the intent element does not

require that the plaintiff acted with malevolence or personal ill-will, it does require that he act

18

with intent to induce the plaintiff to rely on that misrepresentation. *In re Moen*, 238 B.R. at 791.

As stated above, because there is rarely direct evidence of intent to induce a person to act based

on the misrepresentation we look at all of the circumstances. *Moen*, 238 B.R. at 792 (citing *In re*

*Fenninger*, 49 B.R. 307, 310 (Bankr. E.D. Pa. 1985)). Here, there is no evidence that the

defendant hid or intended to hide the existence of the Sweno Mortgage or to prevent the plaintiff

from obtaining clear title to the Sweno Property. Nor is there any evidence that the defendant

intended to induce the plaintiff to enter into the sale by omitting the Sweno Mortgage in the

Contract for Deed or failing to disclose it during the time the defendant received payments from

the plaintiff.

The Court finds that the plaintiff has failed to meet his burden of proof on this element.

### D.   The creditor justifiably relied on the representation

Next, the plaintiff must prove that he justifiably relied on the defendant's representation.

*Field v. Mans*, 516 U.S. 59, 71 (1995). Justifiable reliance is a subjective determination made in

light of the qualities and characteristics of the particular creditor and the circumstances of the

particular case. *See In re Ungar*, 633 F.3d 675 (8th Cir. 2011). It is an intermediate standard

between actual reliance and reasonable reliance. *Field v. Mans*, 516 U.S. at 72-74. A court

analyzing this element can examine any number of factors to determine whether a creditor's

reliance was justifiable. These factors include:  (1) the parties' previous business dealings; (2)

events which might have put the creditor on notice that the representations were not well-

founded; (3) whether a simple inquiry or request for additional information might have revealed

the misinformation; (4) the course of dealings between the creditor and the debtor; and (5)

information commonly known about the particular industry. *In re Shadinger*, 357 B.R. at 164-

65.

Here, the plaintiff alleges that the defendant took advantage of their friendship or working relationship, which proves justifiable reliance. *See In re Juve*, 761 F.3d 847 (8th Cir. 2014).  In *Juve,* a debtor had taken advantage of his decade long friendship with a creditor and that creditor had justifiably relied on misrepresentations and failure to disclose information.  The debtor knew that he had granted liens on the collateral for a loan and attempted to conceal the facts.  Here, like *Juve*, the parties were friends and co-workers and the plaintiff relied on those relationships. Unlike *Juve,*  the defendant did not intend to or actively conceal the mortgage. Also unlike *Juve,* the defendant did not intend to deceive the plaintiff when he made any representations about the mortgage or the ability to deliver clear title during the course of the Contract for Deed.

There is no evidence that the plaintiff relied on the defendant's knowledge about real estate.  None of the parties involved in the transaction had experience with a contract for deed and little  experience with the purchase of real estate; neither the plaintiff nor the defendant had purchased or sold real estate and Ms. Sweno had never sold property at the time the Contract for Deed was signed.

There is no evidence supporting an allegation that the defendant took advantage of the plaintiff's lack of knowledge of English. Neither party had a command of the other's primary language. From the evidence about the request to pay at the bank, it is clear that neither understood the other.

The Court also considers the fact that the plaintiff could not and did not read the Contract for Deed and chose not to have it translated until after the time that all payments had been made. There is no evidence that the plaintiff knew that there was a place to list liens and encumbrances in paragraph 2(e) of the Contract for Deed.  If he did not know that it was blank, he could not

have relied on the fact that the Sweno Mortgage was not disclosed in the Contract for Deed. *See White v. Boucher*, 322 N.W.2d 560, 564 (Minn. 1982) (finding there could be no justifiable reliance where the plaintiffs testified that they had never seen the document that contained the alleged misrepresentations and it was, therefore, impossible for them to have been misled by the representations).

Moreover, the plaintiff's actions after learning about the Sweno Mortgage indicate that he might have entered into the agreement regardless of the existence of the mortgage because it would have been paid off if the plaintiff's payments had been applied to the mortgage. After learning about the Sweno Mortgage he continued paying Ms. Sweno and he also directed the defendant to pay the bank an additional $4,000. The plaintiff paid more than $7,000 after he learned about the mortgage.

The failure to look at the public record can be part of the basis for finding a lack of justifiable reliance. *See Field v. Mans,* 516 U.S. at 70. Here, however, the Court would not expect that the defendant should or would know to look at the public records, given his inability to read English and lack of knowledge about real estate.

In summary, the fact that the plaintiff and the defendant were work friends and that the defendant did not know much English weigh in favor of a finding of justifiable reliance. The fact that the plaintiff did not read the Contract for Deed and continued to make payments for several months after he learned about the mortgage weigh in favor of finding that any reliance was not justified. Because it is the plaintiff's burden to prove justifiable reliance by a preponderance of the evidence, the Court finds that the plaintiff did not meet his burden and thus, did not justifiably rely on the defendant's representations or failure to disclose.

**E.    The creditor sustained the alleged loss as the proximate result of the
representation having been made**

The next element is that the creditor sustained a loss because of the misrepresentations.
Here, the plaintiff did not receive clear title to the Sweno Property after making all payments
required under the Contract for Deed.  Rather, the plaintiff was forced to move and the lender
foreclosed on the property.  The plaintiff paid a total of $47,000 to or for the benefit of Ms.
Sweno, but did not obtain a home.  It is clear that the plaintiff suffered a loss.

The amount of the loss here would not be for the full amount the plaintiff paid, but the
amounts collected by the defendant prior to the breakup, after which time Ms. Sweno began
collecting the payments.  The plaintiff has alleged in his complaint that this would be in the
amount of $22,000 and the defendant's oral agreement is consistent with this allegation.  The
Court finds that this would be the maximum amount of damages owed by the defendant, if any.

The Court now analyzes whether the loss was the proximate result of any statements or
omissions made by the defendant.  Here, the loss resulted from the use of the plaintiff's
payments and the defendant's and Ms. Sweno's tax refunds to pay other household expenses,
instead of paying off the Sweno Note.  There was nothing in the Contract for Deed that required
Ms. Sweno to use the payments in any specific way.  She was required to continue making her
monthly mortgage payments, which she did.  If the plaintiff had known about the Sweno
Mortgage, however, he might not have entered into the agreement or might have done something
to make sure that the note was paid off.  Once he learned of the mortgage, however, the plaintiff
continued to pay approximately $7,000. Thus, the loss caused by the failure of the defendant to
disclose the mortgage would be decreased by that amount.

22

### F. **False pretenses**

The plaintiff has also alleged that the debt was incurred under § 523(a) pursuant to a false pretense.  A false pretense is an implied misrepresentation or conduct that is intended to create and foster a false impression.  *In re Moen*, 238 B.R. at 791 (citations omitted).  A debtor has engaged in false pretense (1) if he knows the facts to be other than what the creditor believes them to be under the circumstances; and (2) he has a duty to correct the false impression.  *Id.*  In Minnesota, the general rule is that one party to a transaction has no duty to disclose material facts to the other party unless special circumstances dictate otherwise.  *Hommerding v. Peterson*, 376 N.W.2d 456, 459 (Minn. Ct. App. 1985).  If a debtor conceals a material fact that is peculiarly within his own knowledge, knowing that the creditor acted on the presumption that no such fact existed, it is as much a fraud as if the debtor expressly denied the fact.  *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976).   Additionally, if a debtor has knowledge that there was no reasonable expectation that the obligations under the agreement would be fulfilled, he would have an affirmative duty to disclose the facts before the creditor enters into the agreement.  *Id.*

Here, as discussed above, the failure to disclose the mortgage does not meet the definition of a false pretense because the plaintiff testified that he did not read the Contract for Deed at the time he signed it.  There was no evidence that the defendant knew that the plaintiff did not know about the Sweno Mortgage thereby creating a false impression in order to induce him to buy the house.  Regarding the representation that the mortgage debt would be paid and clear title would be given to the plaintiff, the defendant and Ms. Sweno believed that the mortgage debt would be paid off at the time the plaintiff signed the Contract for Deed.  The defendant also believed that

was true at all times that he was collecting payments from the plaintiff.  The Court finds that the

plaintiff has failed to establish the elements of false pretenses.

**IV.     Section 523(a)(4) – Fraud or Defalcation While Acting in a Fiduciary Capacity**

The plaintiff has also alleged that the defendant violated under § 523(a)(4). A debt is

excepted from discharge under § 523(a)(4) "for fraud or defalcation while acting in a fiduciary

capacity …." 11 U.S.C. § 523(a)(4).  To prevail, a creditor must show: (1) the existence of a

fiduciary relationship between creditor and debtor; and (2) that the debtor committed fraud or

defalcation in the course of the fiduciary relationship.  *Jafarpour v. Shahrokhi* (*In re Shahrokhi*),

266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

Whether the fiduciary relationship exists is a question of Federal Law and it is

determined in a "strict and narrow" sense.  *In re Thompson*, 686 at 944 (citations omitted).  The

statute applies to express or technical trusts, and not constructive trusts or those implied by

contract.  *Id.*  The fiduciary relationship must have arisen from an express or technical trust that

was imposed before and without reference to the wrongdoing that caused the debt.  *In re Brown*,

427 B.R. at 726 (citing *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984

(8th Cir. 1997)).  Trusts that satisfy the § 523(a)(4) standards can be created by contract, statute

or common law.  *In re Thompson*, 686 F.3d at 944.

The plaintiff argues that § 523(a)(4) applies because the defendant acted as an agent or

apparent agent on behalf of Ms. Sweno.  The Court disagrees. Whether the defendant acted as an

agent for Ms. Sweno is irrelevant.  The fiduciary relationship must be between the defendant and

the plaintiff.  There is no contract that establishes a fiduciary relationship between the defendant

and the plaintiff.  The plaintiff cites no statutory or case law authority that supports an argument

that the defendant and the plaintiff were in a fiduciary relationship -- they were co-workers and

casual friends.  The defendant's status as the plaintiff's superior at work for some period of time does not give rise to a fiduciary relationship under Federal Law.  The plaintiff failed to offer any evidence showing the presence of an express or technical trust.  Thus, the Court finds that the plaintiff has not proved that he and the defendant were in a fiduciary relationship and has not met his burden of proof on this element.

The second element of the § 523(a)(4) test is that a debtor acted with actual fraud or defalcation.  As stated above, the Court did not find an actual fraud.  "Defalcation is defined as the misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds."  *In re Brown*, 427 B.R. at 727.  Here, because there was no trust and no fiduciary relationship, the defendant could not have misappropriated trust funds held in a fiduciary capacity.  Thus, the plaintiff has failed to prove this element and § 523(a)(4) does not apply.

## V.      Section 523(a)(6) – Willful or Malicious Injury

The last theory under which the plaintiff alleges that the debt should be nondischargeable is that the debt here arises from "willful and malicious injury" of a creditor or its property under § 523(a)(6).  *In re Thompson*, 686 F.3d at 947.  Willful and malicious are two separate and distinct requirements.  Under well-developed Eighth Circuit precedent the term willful means a deliberate or intentional act.  *In re* Bren, 284 B.R. at 698-99 (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 59 (1998)); *In re Scarborough*, 171 F.3d at 641; *Johnson v. Fors (In re Fors)*, 259 B.R. 131,136 (B.A.P. 8th Cir. 2001).  Maliciousness is a separate requirement and the plaintiff must show that the defendant's conduct was targeted at the creditor in the sense that it was certain or almost certain to cause harm.  *Id.* at 699 (citing *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743-44 (8th Cr. 1991)); *Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d

875, 880-81 (8th Cir. 1985). Thus, to except a debt from discharge because it was a result of a

willful and malicious injury, the creditor must prove that the debtor intended both the injury and

the harm. *In re Bren*, 284 B.R. at 699, (citations omitted); *Allstate Ins. V. Dziuk (In re Dziuk)*,

218 B.R. 485, 487 (Bankr. D. Minn. 1998). Debt arising from negligent or reckless conduct does

not fall within the exception. *Kawaauhau*, 523 U.S. at 59.

For the same reasons that the Court finds that the defendant did not act with fraudulent

intent, the Court finds that the defendant's actions do not rise to the level of being either willful

or malicious. The Court has already found that the defendant believed that Ms. Sweno would

deliver clear title to the Sweno Property at the time the Contract for Deed was signed. He did not

intend to injure or harm the plaintiff when he negotiated the sale of the Sweno Property or when

he accepted payments from the plaintiff on behalf of Ms. Sweno. Both the defendant and Ms.

Sweno had every intention of delivering clear title to the property to the plaintiff after the

plaintiff made all of his required payments pursuant to the Contract for Deed. While the

defendant felt badly that the plaintiff had not received title to the house, this did not indicate that,

in hindsight, he had intended to hurt the plaintiff. The defendant's actions were neither willful

nor malicious acts intended to cause harm to the plaintiff.

## CONCLUSION

At the time the Contract for Deed was negotiated and signed and when payments were

made to the defendant, the defendant honestly believed that the Sweno Note and Sweno

Mortgage would be paid off and Ms. Sweno would deliver clear title to the plaintiff. This Court

carefully listened to the testimony offered by the defendant, the plaintiff and Ms. Sweno. The

Court also observed their demeanors while testifying and found that all three witnesses were very

credible. There is no evidence to support a finding that the defendant did not honestly believe

26

that Ms. Sweno would deliver clear title or that the defendant deliberately omitted telling the

plaintiff about the mortgage. The plaintiff has failed to meet his burden of proof as to whether

the debt owing from the defendant is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A),

(a)(4) or (a)(6).  Thus, the debt owing to the plaintiff is discharged.

## CONCLUSIONS OF LAW

1. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and this

   Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) & 1334.

2. Venue is proper before this Court under 28 U.S.C. §§ 1408 & 1409.

3. The debt owing from the defendant to the plaintiff related to the Contract for Deed is

   discharged.

## ORDER

IT IS ORDERED:  The defendant's debt to the plaintiff is not excepted from the

defendant's discharge.

LET JUDGMENT BE ENTERED ACCORDINGLY.


/e/ Kathleen H. Sanberg
_____
KATHLEEN H. SANBERG
UNITED STATES BANKRUTPCY JUDGE